AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York



| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>ROBERT WALKER,<br>a/k/a "T.O.",<br><br><br>Defendant | )<br>)<br>)  Case No.  **5:21-MJ- 99   (ATB)**<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of between December 13, 2020, and January 25, 2021, in the county of Onondaga in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| **Title 18, United States Code, Section 922(g)(1)** | **Possession of a Firearm by a Previously Convicted Felon** |
| **Title 21, United States Code, 841(a)(1)** | **Distribution and Possession with the Intent to Distribute Controlled Substances, Namely, Heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl (Fentanyl)** |

This criminal complaint is based on these facts:
**See Attached Affidavit**

☒   Continued on the attached sheet.

*Complainant's signature*

**Richard Gardinier, Special Agent, ATF**
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   **February 17, 2021**

*Judge's signature*

City and State:   **Syracuse, New York**    **Hon. Andrew T. Baxter, U.S. Magistrate Judge**
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**ROBERT WALKER,**<br>a/k/a "T.O.,"<br><br>**Defendant.** | Case No. 5:21-MJ-     (ATB)<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT

I, Richard Gardinier, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging ROBERT WALKER, the defendant, with violating Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon); and Title 21, United States Code, Section 841(a)(1) & (b)(1)(C) (distribution and possession with the intent to distribute controlled substances, namely, heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl (fentanyl)).

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2, 2017. I attended the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia, where in I was enrolled in and successfully completed both Criminal Investigator Training Program (CITP) and Special Agent Basic Training (SABT). During the course of my training, I received instruction on physical surveillance, interviewing sources of information and defendants, reviewing telephone and financial records, applying for and serving search warrants, firearms trafficking, etc. Prior to my time with ATF, I was employed by the United States Secret Service, Uniformed Division (USSS/UD) for four years.

I was enrolled in and successfully completed the Uniformed Police Training Program (UPTP) at FLETC, as well as New Officer Training with the USSS/UD, located in Beltsville, Maryland.

3. I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for the offenses enumerated in Title 18, 21 and 26, United States Code. As an ATF Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, and Title 26 offenses, related to the unlawful possession and/or transfer of firearms.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe ROBERT WALKER has violated Title 18, United States Code, Section 922(g)(1) by possessing two firearms—namely, a Hipoint, model CF380, .380 caliber pistol bearing serial number P8106866, and an RG Industries, model RG31, .38 special caliber revolver bearing serial number 0081628—after previously having been convicted of a crime punishable by imprisonment by a term exceeding one year; and Title 21, United States Code, Sections 841(a)(1) & (b)(1)(C), by distributing and possessing with the intent to distribute heroin, a Schedule I controlled substance, and of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl (fentanyl), a Schedule II controlled substance.

## PROBABLE CAUSE

6. During the week of December 13, 2020, an ATF Confidential Informant (the "CI")[1] informed me, in substance and in part, of the following:

   a. An individual previously unknown to the CI contacted the CI via text message and identified himself as "T.O." T.O., later identified as ROBERT WALKER (the defendant), indicated to the CI that the CI should "hit this phone for the work." The CI, who had previously purchased heroin from a recently arrested associate of WALKER's, understood this to mean that the caller was offering to supply the CI with heroin.

7. Later during the week of December 13, 2020, the CI, at ATF's direction, conducted a controlled purchase of heroin mixed with fentanyl. Based on my participation in that controlled purchase and discussions with the CI, I have learned, in substance and in part, the following:

   a. In a series of text messages and phone calls, the CI arranged the transaction with WALKER. The CI requested five "bricks"[2] of heroin, and WALKER agreed.

   b. During the controlled purchase, the CI was outfitted with multiple recording and transmitting devices to capture the transaction both in audio and video format.

---

[1] The CI was previously arrested on a New York State felony weapons charge, to which the CI has pleaded guilty. The CI is working with law enforcement in hopes of receiving leniency at sentencing. The CI is also being paid by ATF for the CI's work as an informant. The CI has worked with ATF on several investigations and has provided reliable and credible information in the past.

[2] Based on my training and experience, I know that a "brick" is common street slang in the Syracuse area to refer to a white package that includes five bundles each containing 10 glassine envelopes containing heroin. A "brick" therefore contains 50 glassine envelopes and is considered to be packaged for resale.

3

    c. The CI drove to the address WALKER had provided in Syracuse, New York, where the CI met with an individual later confirmed to be WALKER. Specifically, after the transaction was over, the CI identified WALKER in a photo array as the individual he knew as "T.O."

    d. During the transaction, the CI got into WALKER's car, where WALKER identified himself as "T.O." and referenced the previous purchases the CI had made. WALKER also indicated he could provide heroin and other drugs in the future for similar prices. WALKER then produced five white packages which contained several bundles of glassine envelopes, inside of which was a beige chunky substance. WALKER indicated it was heroin and requested $1,000 as payment. The CI provided WALKER with $1,000 in pre-recorded, government funds as payment for the purported heroin.

    e. A field test of one of the glassine envelopes contained inside of one of the bricks, purchased by the CI from WALKER was positive for heroin. A later Report of Laboratory Analysis indicated that the substance contained heroin and fentanyl.

8.     During the week of December 20, 2020, the CI, at ATF's direction, conducted another controlled purchase. Based on my participation in that controlled purchase and discussions with the CI, I have learned, in substance and in part, the following:

    a. In communications with WALKER, the CI arranged to purchase heroin and a firearm from WALKER.

    b. During the purchase, the CI was outfitted with multiple recording and transmitting devices to capture the transaction both in audio and video format.

    c. The CI drove to an address provided by WALKER in Syracuse, New York, where the CI met with WALKER and purchased approximately 10 "bricks" of heroin, a Ruger, model P89, 9mm caliber pistol bearing serial number 313-10683, and a quantity of ammunition for $4,000.

    d. A field test of one of the glassine envelopes contained inside of one of the bricks was positive for heroin. A later Report of Laboratory Analysis indicated that the substance contained heroin and fentanyl.

9. During the week of January 3, 2021, the CI, at ATF's direction, conducted another controlled purchase. Based on my participation in that controlled purchase and discussions with the CI, I have learned, in substance and in part, the following:

    a. In communications with WALKER, the CI arranged to purchase narcotics and a firearm from WALKER.

    b. The CI was again outfitted with multiple recording and transmitting devices to capture the transaction both in audio and video format. The CI drove to an address provided by WALKER in Syracuse, New York, where the CI met with WALKER and purchased nine "bricks" of suspected heroin, a privately made firearm bearing no make, model, caliber or serial number designations (commonly known as a "ghost gun"), and a quantity of ammunition for $3,550.

    c. A field test of one of the glassine envelopes contained inside of one of the bricks was positive for heroin. The item was submitted to the lab for forensic analysis, the results of which are pending.

10. During the week of January 17, 2021, WALKER contacted the CI several times by phone. The CI asked WALKER for ten "bricks" of heroin and for firearms, namely pistols. On

or about January 21, 2021, WALKER sent a text message to the CI stating "I got 2 tools for you bro." The CI inquired as to the price, to which WALKER responded, "Ima do 2500 for them 2."

11. On or about January 21, 2021, the CI, at ATF's direction, conducted another controlled purchase. Based on my participation in that controlled purchase and discussions with the CI, I have learned, in substance and in part, the following:

   a. During the controlled purchase, the CI was outfitted with multiple recording and transmitting devices to capture the transaction both in audio and video format.

   b. The CI drove to the address WALKER had provided in Syracuse, New York, and met with WALKER in the CI's car. Once inside, WALKER and the CI discussed the firearms, and WALKER provided the CI with a Hipoint, model CF380, .380 caliber pistol bearing serial number P8106866, a RG Industries, model RG31, .38 special caliber revolver bearing serial number Q081628, and seven rounds of ammunition. WALKER both cocked and dry-fired the revolver in order to demonstrate that the firearm was in working order. WALKER also provided the CI with 10 pink packages containing several bundles of purported heroin. The CI paid WALKER $5,000 in pre-recorded, government funds for the purchase.

   c. A field test of one of the glassine envelopes contained inside of one of the "bricks" purchased by the CI from WALKER was positive for heroin. The item was submitted to the lab for forensic analysis, the results of which are pending.

12. During the week of January 25, 2021, the CI, at ATF's direction, conducted another controlled purchase. Based on my participation in that controlled purchase and discussions with the CI, I have learned, in substance and in part, the following:

      a. In a series of text messages and phone calls, the CI arranged the transaction with WALKER and requested 10 "bricks" of heroin, and WALKER agreed.

      b. The CI drove to the address WALKER had provided in Syracuse, New York, where the CI met with WALKER. During the controlled purchase, the CI was outfitted with multiple recording and transmitting devices to capture the transaction.

      c. During the transaction, WALKER sold eight "bricks" of heroin to the CI, along with two additional grams of a heroin and fentanyl mixture, for which the CI paid $2,500 in total.

      d. A field test of one of the glassine envelopes contained inside of one of the bricks, purchased by the CI from WALKER was positive for heroin. The item was submitted to the lab for forensic analysis, the results of which are pending.

13. I have performed a check of WALKER's criminal history, which revealed that WALKER was convicted on or about April 14, 2016, in Onondaga County Court of Attempted Criminal Possession of a Weapon in the Second Degree, a felony offense punishable by imprisonment for a term exceeding one year. On May 6, 2016, WALKER was sentenced to a one-year term of imprisonment.

14. I have examined the Hipoint, model CF380, .380 caliber pistol and the RG Industries, model RG31, .38 special caliber revolver described above. Based on that examination, and my training and experience, I have determined that both were manufactured outside the state of New York.

15. In light of the foregoing, I respectfully submit that there is probable cause to believe that ROBERT WALKER, the defendant, has violated Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). I respectfully

request the Court authorize the filing of this complaint and issue an arrest warrant so that the defendant may be arrested and brought to court for further proceedings in accordance with the law.

Attested to by the affiant:

_____
Richard Gardinier
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

I, the Honorable Andrew T. Baxter, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on February 17, 2021, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
HON. ANDREW T. BAXTER
UNITED STATES MAGISTRATE JUDGE